1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MOSES J. HERNANDEZ,

11            Plaintiff,                    No. CIV S-09-1379 DAD

12        vs.

13   MICHAEL J. ASTRUE,                    <u>ORDER</u>
     Commissioner of Social Security,
14
              Defendant.
15   _____/

16            This social security action was submitted to the court without oral argument for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, plaintiff's motion is granted, defendant's cross-

19   motion is denied, the decision of the Commissioner of Social Security (Commissioner) is

20   reversed, and this matter is remanded for further proceedings in accordance with this order.

21                          **PROCEDURAL BACKGROUND**

22            On April 13, 2006, plaintiff filed an application for Disability Insurance Benefits

23   (DIB) under Title II of the Social Security Act (the Act) and an application for Supplemental

24   Security Income (SSI) under Title XVI of the Act, alleging disability beginning on December 6,

25   2005 due to schizophrenia, bipolar disorder, and depression.  (Transcript (Tr.) at 84-91, 95-112.)

26   Plaintiff's applications were denied initially on September 15, 2006, and upon reconsideration on

July 11, 2007.  (Tr. at 65-78.)  A hearing was held before an Administrative Law Judge (ALJ) on

September 5, 2008.  (Tr. at 35-64, 81.)  Plaintiff was represented by a non-attorney representative

and testified at the hearing.  In a decision issued on December 19, 2008, the ALJ found that

plaintiff was not disabled.  (Tr. at 5-18.)  The ALJ entered the following findings:

> 1.  The claimant meets the insured status requirements of the
> Social Security Act through September 30, 2011.
>
> 2.  The claimant has not engaged in substantial gainful activity
> since December 6, 2005, the alleged onset date (20 CFR 404.1571
> *et seq.*, and 416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairments:  adjustment
> disorder v. major depressive disorder and substance abuse (20 CFR
> 404.1521 *et seq.* and 416.921 *et seq.*).
>
> 4.  The claimant does not have an impairment or combination of
> impairments that meets or medically equals one of the listed
> impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
> 404.1525, 404.1526, 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform a full range of work at all exertional levels but with the
> following nonexertional limitations: limited to simple repetitive
> tasks with no frequent public contact consistent with a limitation to
> unskilled work.
>
> 6.  The claimant is unable to perform any past relevant work (20
> CFR 404.1565 and 416.965).
>
> 7.  The claimant was born on January 31, 1978 and was 27 years
> old, which is defined as, a younger individual, on the alleged
> disability onset date (20 CFR 404.1563 and 416.963).
>
> 8.  The claimant has a limited education and is able to
> communicate in English (20 CFR 404.1564 and 416.964).
>
> 9.  Transferability of job skills is not material to the determination
> of disability because using the Medical-Vocational Rules as a
> framework supports a finding that the claimant is "not disabled,"
> whether or not the claimant has transferable job skills (See SSR
> 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10.  Considering the claimant's age, education, work experience,
> and residual functional capacity, there are jobs that exist in
> significant numbers in the national economy that the claimant can
> perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

1      11.  The claimant has not been under a disability, as defined in the
       Social Security Act, from December 6, 2005 through the date of
2      this decision (20 CFR 404.1520(g) and 416.920(g)).

3  (Tr. at 8-18.)

4          On March 16, 2009, the Appeals Council denied plaintiff's request for review of

5  the ALJ's decision.  (Tr. at 1-4.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g)

6  by filing the complaint in this action on May 18, 2009.

7                              **LEGAL STANDARD**

8          The Commissioner's decision that a claimant is not disabled will be upheld if the

9  findings of fact are supported by substantial evidence in the record as a whole and the proper

10 legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

11 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

12 The findings of the Commissioner as to any fact, if supported by substantial evidence, are

13 conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such

14 relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

15 Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones

16 v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401

17 (1971)).

18         A reviewing court must consider the record as a whole, weighing both the

19 evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d

20 at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

21 supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

22 substantial evidence supports the administrative findings, or if there is conflicting evidence

23 supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,

24 Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

25 improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d

26 1335, 1338 (9th Cir. 1988).

1    In determining whether or not a claimant is disabled, the ALJ should apply the

2    five-step sequential evaluation process established under Title 20 of the Code of Federal

3    Regulations, Sections 404.1520 and 416.920.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

4    The five-step process has been summarized as follows:

5    Step one:  Is the claimant engaging in substantial gainful activity?
     If so, the claimant is found not disabled.  If not, proceed to step
6    two.

7    Step two:  Does the claimant have a "severe" impairment?  If so,
     proceed to step three.  If not, then a finding of not disabled is
8    appropriate.

9    Step three:  Does the claimant's impairment or combination of
     impairments meet or equal an impairment listed in 20 C.F.R., Pt.
10   404, Subpt. P, App. 1?  If so, the claimant is automatically
     determined disabled.  If not, proceed to step four.

11

12   Step four:  Is the claimant capable of performing his past work?  If
     so, the claimant is not disabled.  If not, proceed to step five.

13   Step five:  Does the claimant have the residual functional capacity
     to perform any other work?  If so, the claimant is not disabled.  If
14   not, the claimant is disabled.

15   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

16   The claimant bears the burden of proof in the first four steps of the sequential

17   evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

18   sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

19   (9th Cir. 1999).

20                              **APPLICATION**

21   Plaintiff argues that the ALJ committed three principal errors in finding him not

22   disabled:  (1) the ALJ rejected the opinions of Dr. Canty, an examining psychiatrist, without a

23   legitimate basis for so doing; (2) the ALJ rejected the third-party statement of plaintiff's

24   girlfriend that plaintiff had reported seeing and hearing things, but did not articulate specific,

25   germane reasons for so doing; and (3) the ALJ erred when he used the grids as a framework for

26   /////

4

1  decisionmaking and failed to secure the testimony of a vocational expert (VE).  These arguments

2  are addressed below.

3  **I.      The Opinions of the Examining Psychiatrist**

4             The weight to be given to medical opinions in Social Security disability cases

5  depends in part on whether the opinions are proffered by treating, examining, or nonexamining

6  health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

7  "As a general rule, more weight should be given to the opinion of a treating source than to the

8  opinion of doctors who do not treat the claimant . . . ."  Lester, 81 F.3d at 830.  This is so because

9  a treating doctor is employed to cure and has a greater opportunity to know and observe the

10  patient as an individual.  Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v.

11  Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

12             A treating physician's uncontradicted opinion may be rejected only for clear and

13  convincing reasons, while a treating physician's opinion that is controverted by another doctor

14  may be rejected only for specific and legitimate reasons supported by substantial evidence in the

15  record.  Lester, 81 F.3d at 830-31.  However, the ALJ need not give weight to a conclusory

16  opinion supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th

17  Cir. 1999) (affirming rejection of a treating physician's "meager opinion" as conclusory,

18  unsubstantiated by relevant medical documentation, and providing no basis for finding the

19  claimant disabled); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

20             "The opinion of an examining physician is, in turn, entitled to greater weight than

21  the opinion of a nonexamining physician."  Lester, 81 F.3d at 830.  An examining physician's

22  uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing

23  reasons, and when an examining physician's opinion is controverted by another doctor's opinion,

24  the examining physician's opinion may be rejected only for specific and legitimate reasons

25  supported by substantial evidence in the record.  Id. at 830-31.

26  /////

used 25

1    "The opinion of a nonexamining physician cannot by itself constitute substantial

2    evidence that justifies the rejection of the opinion of either an examining physician *or* a treating

3    physician." Id. at 831 (emphasis in original).

4    Here, plaintiff contends that the ALJ did not have a legitimate basis for rejecting

5    the opinions of consultative examiner Dr. Canty.  The administrative record reflects that the state

6    agency obtained the services of Timothy Canty, M.D., Board Eligible in General and Child

7    Psychiatry, to examine plaintiff and produce a consultative examination report after plaintiff

8    sought reconsideration of the initial denial of his DIB and SSI applications.  (Tr. at 279, 283-84.)

9    When Dr. Canty evaluated plaintiff on June 1, 2007, no psychiatric records were provided for his

10   review.  (Tr. at 279.)  Based on his interview and his own observations of plaintiff, Dr. Canty

11   rendered the following findings:  plaintiff appeared guarded and internally preoccupied; his chief

12   complaint was that he "can't keep a job"; he "quite genuinely reported that he is being constantly

13   followed by an 'all-black' presence," which he described as "very large" and stated that he "does

14   not know if it is a person or not"; he occasionally sees two men with a large dog prowling his

15   neighborhood; he indicated that he has had "this problem" for several years, has had mental

16   health treatment in the past, has been psychiatrically hospitalized twice, and recently "connected

17   at Visions where he sees a psychiatrist and therapist"; he reported that his current psychiatric

18   medications were Seroquel and Lexapro.  (Tr. at 279-80.)  With regard to family, social life, and

19   employment history, plaintiff stated that he lived in a house with his mother, had four children

20   who lived with their mother, dropped out of school in the 11th grade, had been arrested for

21   violating a restraining order and for false imprisonment, and last worked as a maintenance man at

22   an apartment complex but stopped going to work after several months because "the black

23   presence kept showing up and scaring him."  (Tr. at 280.)  Plaintiff indicated that he does his

24   own chores but rarely leaves the house, has no friends, talks to his mother, and listens to the radio

25   occasionally but does not like television.  (Id.)  Plaintiff described the following drug and alcohol

26   history:  he had been a heavy drinker for the last 15 years but had recently cut back to 3 or 4

1  times a week; he was a daily drinker until "three weeks ago"; he drinks 12 beers at a time; he

2  used methamphetamine from 1998 until 2001 and quit on his own; he denied other drug use.

3  (Id.)

4          Dr. Canty conducted a mental status examination and found as follows:  plaintiff

5  repeatedly looked out the window during the examination and seemed frightened; he was

6  cooperative; his thoughts seemed mostly clear, but he was clearly internally preoccupied; he

7  denied homicidal ideation; he thinks about suicide but has no intent or plan; he has daily

8  hallucinations but denies auditory hallucinations; he describes his typical mood as getting mad a

9  lot; he admitted irritability and appeared somewhat agitated with a slightly labile effect; he was

10 oriented; his immediate recall was fair but recall at five minutes was poor; he did not perform

11 well on tests of calculation, concentration, abstract thinking, and judgment.  (Tr. at 280-81.)

12         Dr. Canty diagnosed schizophrenia and alcohol dependence.  (Tr. at 281.)  He

13 offered the following analysis and prognosis:

14         He appeared genuinely psychotic.  His description of the visual
           hallucination also seemed quite genuine.  He clearly has alcohol
15         dependence as well, but I don't think his psychotic symptoms are
           directly related to it.  He recently connected with mental health and
16         says he was psychiatrically hospitalized a few months ago.  His
           presentation was quite consistent with true psychosis.  His
17         prognosis is guarded.

18 (Tr. at 282.)  Dr. Canty concluded with the following opinions of plaintiff's functional capacity:

19         He is not able to manage money in his interests and would need a
           professional payee if funds are awarded.  The claimant appears
20         actively psychotic and would not be able to participate in typical
           work.  He describes significant disruption of past jobs due to visual
21         hallucinations.  Because of them he would not be able to attend
           work.  He would not interact effectively with others.

22

23 (Id.)

24         Nonetheless, the ALJ gave Dr. Canty's opinions

25         no weight as Dr. Canty had no medical records to review, was
           unaware that [the claimant's] hospitalizations have been linked to
26         drug and/or alcohol use with resolution of symptoms after he "dries

1
2   out" and he also told Dr. Canty that he hadn't used
    methamphetamine since 2001 although he tested positive for it in
    February 2007.  Clearly, the claimant was not truthful with Dr.
    Canty and his conclusion is not supported by the evidence.

3

4   (Tr. at 16.)

5           Plaintiff disputes the ALJ's characterization of the record, arguing that the

6   hospitalizations were not due to drug or alcohol abuse, there are no references in the hospital

7   records to "drying out," and there is no evidence that plaintiff's symptoms resolved after

8   allegedly "drying out."  Plaintiff also points out that Dr. Canty was well aware of plaintiff's

9   alcohol dependence, as shown by the fact that the doctor included it in his Axis I diagnosis and

10  specifically opined that he did not think plaintiff's psychotic symptoms are directly related to his

11  alcohol dependence.  (See tr. at 282.)  In addition, plaintiff asserts that there is no evidence of

12  amphetamine abuse at the time of Dr. Canty's examination in June 2007 and that, although

13  plaintiff had tested positive for amphetamines in February 2007, the hospital had viewed

14  plaintiff's overdose on Benadryl and beer as a suicide attempt and had assessed him as suffering

15  from depressive disorder rather than amphetamine abuse at that time.  (See tr. at 233, 235, 238,

16  239, 300-01.)  Similarly, when plaintiff was hospitalized in 2003 for attempting suicide by taking

17  pills and drinking beer, the hospital described his toxicology screen as consistent with a "minor

18  overdose" and diagnosed plaintiff as suffering from major depression.  (See tr. at 181, 184, 186-

19  87.)  Plaintiff also cites treatment notes from Visions Unlimited reflecting ongoing alcohol abuse

20  but no current problem with amphetamine abuse from May 2007 through June 2008.  (See tr. at

21  313-23.)  Plaintiff argues that, in the absence of evidence of amphetamine abuse at the time of

22  Dr. Canty's examination or thereafter, it is irrelevant that plaintiff told Dr. Canty he had last used

23  methamphetamine in 2001 rather than in February of 2007.

24          Plaintiff argues further that Dr. Canty's opinions are consistent with plaintiff's

25  treatment records from Primary Care and Visions Unlimited, as well as with plaintiff's

26  psychiatric hospitalizations, and yet the ALJ rejected Dr. Canty's opinions in favor of the

8

1   opinions of Dr. Dhaliwal, a non-treating, non-examining state agency physician who reviewed

2   the file at the reconsideration stage of the administrative proceedings and merely affirmed the

3   decisions of the state agency physicians who had found plaintiff "not disabled" at the initial

4   stage.  (Tr. at 15.)

5           The court finds plaintiff's arguments persuasive.  The ALJ found that plaintiff's

6   "medically determinable impairments could reasonably be expected to cause the alleged

7   symptoms except those related to sleep apnea, tremors or obesity" but that plaintiff's statements

8   concerning the intensity, persistence and limiting effects of his symptoms were not credible to

9   the extent that they were inconsistent with a residual functional capacity to perform a full range

10  of work at all exertional levels "limited to simple repetitive tasks with no frequent public contact

11  consistent with a limitation to unskilled work."  (Tr. at 13-14.)  The ALJ based his findings

12  merely on what appears to be his own theory that plaintiff's psychiatric symptoms are caused by

13  drug and alcohol abuse and resolved when he was clean and sober:

14              The evidence shows the claimant has a long history of substance
                abuse that leads to need for treatment due to ingestion of drugs
15              and/or alcohol use.  However, the evidence also shows that his
                increased mental symptoms respond quickly to cessation of
16              substance use and to regular use of his prescribed medications and
                he is not disabled with or without drug use.  For example, the
17              claimant was hospitalized at Heritage Oaks Hospital in December
                2003 after drinking alcohol and ingesting benzodiazepine.  He
18              admitted to a history of binge drinking.  He stabilized quickly on
                treatment.  He was also noted to be misusing drugs in March 2006
19              after he took two to four of his girlfriend's Soma pills.  At that
                time, he inconsistently denied any history of drug and/or alcohol
20              use.  However, he was discharged with no medication or need for
                treatment.  (Ex 1F, 2F [tr. at 177-202])

21

22  (Tr. at 14.)

23          The court finds that the ALJ's characterization of the evidence, theory of

24  causation, and decision to reject Dr. Canty's opinions in their entirety are not supported by

25  substantial evidence in the administrative record.  In contrast, Dr. Canty's opinions are consistent

26  with the treatment records and opinions of Hisham Soliman, M.D., plaintiff's treating

9

psychiatrist at Visions Unlimited, which is an adult services agency of the Sacramento County DHHS Mental Health Plan Division.  (Tr. at 273-78.)  On May 19, 2007, Dr. Soliman examined plaintiff, prepared an annual medication service plan, prescribed a two-month supply of the medications plaintiff described to Dr. Canty on June 1, 2007, ordered lab tests, and scheduled plaintiff for a follow-up appointment on July 14, 2007.  (Tr. at 274-78, 320-23.)  Noting plaintiff's depressive symptoms, anger issues, mood swings, and psychotic features, Dr. Soliman diagnosed major depressive disorder, recurrent with psychotic features and alcohol abuse.  (Tr. at 321-23.)  At the follow-up appointment on July 14, 2007, Dr. Soliman found only slight improvement in plaintiff's condition and noted that plaintiff was still getting depressed, having crying spells and getting angry a lot, that plaintiff had just gotten into a conflict and punched a hole in the wall, and that plaintiff had drunk about 6 beers the previous day.  (Tr. at 318.)  Dr. Soliman increased plaintiff's dosage of Seroquel and Lexapro, and directed him to return in three months.  (Tr. at 318-19.)  On October 6, 2007, plaintiff told Dr. Soliman that he was not doing well at all, as his girlfriend had left him after he punched a hole in the wall.  (Tr. at 316.)  Dr. Soliman noted that plaintiff's anger problems had increased, he was still depressed and paranoid, and he was hearing voices.  Plaintiff was taking the prescribed medications, but they did not seem to be helping.  (Id.)  Dr. Soliman increased the Seroquel dosage and instructed plaintiff to return in two months.  (Tr. at 316-17.)

On February 5, 2008, Dr. Soliman examined plaintiff and prepared a new annual medication plan.  (Tr. at 314-15.)  The doctor once again diagnosed major depressive disorder, recurrent with psychotic features.  (Tr. at 314.)  Although plaintiff was living with his girlfriend again, he reported anger, auditory and visual hallucinations, paranoia, and loss of a recent job within two weeks because of his anger.  (Tr. at 315.)  After completing a mental status examination, Dr. Soliman described plaintiff as usually "very childish with very poor insight and judgment regarding his situation."  (Id.)  The doctor discontinued plaintiff's Seroquel and Lexapro medications and prescribed Abilify for plaintiff's mood swings and psychotic features,

1   along with Wellbutrin to monitor his depression and help improve his energy.  (Id.)  When Dr.

2   Soliman saw plaintiff for a follow-up appointment on June 7, 2008, plaintiff's diagnosis was

3   unchanged and he was not doing well.  (Tr. at 313.)  Plaintiff reported that he stayed mostly at

4   home, had no energy, did not talk to anyone, was angry, upset and depressed, and had been

5   unable to get the new medications through the pharmacy.  Dr. Soliman noted poor insight and

6   judgment, and continued plaintiff's medication plan.  (Id.)  Dr. Canty's and Dr. Soliman's

7   opinions and treatment notes clearly do not support the ALJ's opinions that plaintiff's primary

8   diagnosis is substance abuse, that the substance abuse causes plaintiff's need for treatment, that

9   plaintiff's mental symptoms respond quickly to cessation of substance use and regular use of

10  prescribed medications, and that plaintiff stabilizes quickly on treatment.

11          The undersigned finds that the ALJ's stated reasons for giving examining

12  psychiatrist Dr. Canty's opinion no weight are not legitimate.  Dr. Canty's diagnoses and his

13  assessment of plaintiff's inability to perform work-related activities are supported by the treating

14  psychiatrist's diagnoses and treatment notes from 2007 and 2008, as well as the treatment records

15  from Sacramento County Mental Health Treatment Center from 2006 and 2007.  The opinions of

16  Dr. Soliman, who began treating plaintiff in 2007 and who had been treating plaintiff for almost

17  two years when the ALJ issued his decision, and the opinions of Dr. Canty, who examined

18  plaintiff in June 2007, are not controverted by the opinions of Dr. Dhaliwal, the state agency

19  neurologist who reviewed the administrative record in June 2007 and affirmed the unfavorable

20  determinations previously made by two state agency physicians in 2006.

21          The ALJ opined that the non-treating, non-examining neurologist based his

22  conclusion about plaintiff's mental impairments "on the medical evidence as well as numerous

23  inconsistencies in the record between the claimant's ability to function and the diagnosis of

24  schizophrenia with guarded prognosis by Dr. Canty."  (Tr. at 15.)  The ALJ also noted with

25  approval Dr. Dhaliwal's emphasis on plaintiff's failure to admit to Dr. Canty the full extent of his

26  /////

11

1  drug and alcohol abuse and Dr. Dhaliwal's perception that there was "evidence of drug and/or

2  alcohol involvement every time [plaintiff] has any connection with mental health." (Id.)

3         In fact, plaintiff did advise Dr. Canty about his long history of heavy drinking and

4  admitted use of methamphetamine, and Dr. Canty included alcohol dependence in his Axis I

5  diagnosis. (Tr. at 280-81.) The court does not find plaintiff's failure to describe the full extent

6  of his substance use to be a legitimate basis for rejecting Dr. Canty's opinions. As for the alleged

7  inconsistencies in the record, the court finds that those perceived inconsistencies are explained

8  either by the passage of time or by a flawed characterization of the evidence by the ALJ. For

9  example, the ALJ contrasted plaintiff's alleged statements to Dr. Randhawa, an examining

10 psychiatrist who evaluated plaintiff in 2006, that he "does chores around the home and runs

11 errands with his girlfriend" and "enjoys watching TV, playing with the children, and listening to

12 music" with plaintiff's statements to Dr. Canty in 2007 that "he does chores but rarely leaves the

13 home" and "listened to the radio but disliked watching TV." (Tr. at 11-12.) Dr. Randhawa's

14 report reflects that plaintiff said he does chores around the house and runs errands with his

15 girlfriend, but plaintiff also said at that time that he "does not like to go out in public and tries to

16 remain by himself most of the time," which is not at all inconsistent with his statements to Dr.

17 Canty a year later that he "does his own chores" but "rarely leaves the house." (Tr. at 206 &

18 280.) Similarly, Dr. Randhawa's report does not indicate that plaintiff said he "enjoys" watching

19 TV or playing with the children. Rather, the report indicates that plaintiff said he "spends most

20 of his time watching television or playing with his girlfriend's children" and "listens to some

21 music whenever it is possible," which again is not inconsistent with his statements to Dr. Canty

22 that he "listens to the radio occasionally but does not like television." (Tr. at 206 & 280.)

23        Dr. Dhaliwal is not a psychiatrist and never treated or examined plaintiff.

24 Nonetheless, the ALJ was persuaded by Dr. Dhaliwal's determination that, based on "the lack of

25 consistent treatment, inconsistencies in the folder, and the evidence of drug and/or alcohol

26 involvement every time [plaintiff] has any connection with mental health," plaintiff's mental

1  impairments could be accommodated by limiting him to simple repetitive tasks with no frequent

2  general public contact.  (Tr. at 15.)  The ALJ erred in giving great weight to Dr. Dhaliwal's

3  findings and conclusions because the full administrative record establishes that the opinions of

4  Dr. Canty, as an examining physician, should have been accorded greater weight than the

5  opinions of the nonexamining physician.  The reasons stated by the ALJ for giving no weight to

6  the uncontradicted opinions of Dr. Canty and instead giving great weight to the opinions of the

7  non-treating, non-examining neurologist are not convincing and must be rejected by the court

8  because they are not supported by substantial evidence.

9          In the absence of a valid reason for rejecting Dr. Canty's opinions, the court finds

10 that plaintiff is entitled to summary judgment in his favor with respect to his claim that the ALJ

11 improperly rejected the opinions of the examining psychiatrist, Dr. Canty.

12 **II.    Third-Party Statements of Aurora Sosa**

13         The testimony of lay witnesses, including family members and friends, reflecting

14 their own observations of how the claimant's impairments affect his activities must be

15 considered and discussed by the ALJ.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

16 2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232.  Persons who see the claimant on a

17 daily basis are competent to testify as to their observations.  Regennitter v. Comm'r of Soc. Sec.

18 Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir.

19 1993).  If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must

20 give reasons germane to each particular witness.  Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d

21 at 919.  The mere fact that a lay witness is a relative of the claimant cannot be a ground for

22 rejecting the witness's testimony.  Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289.  Nor

23 does the fact that medical records do not corroborate the testimony provide a proper basis for

24 rejecting such testimony.  Smolen, 80 F.3d at 1289.  It is especially important for the ALJ to

25 consider lay witness testimony from third parties where a claimant alleges symptoms not

26 /////

1    supported by medical evidence in the file and the third parties have knowledge of the claimant's

2    daily activities.  20 C.F.R. § 404.1513(e)(2); SSR 88-13.

3            Questions of credibility and the resolution of conflicts in the testimony are usually

4    deemed functions solely of the Commissioner.  Morgan, 169 F.3d at 599.  The determination of

5    credibility is said to be a function of the ALJ acting on behalf of the Commissioner.  Saelee, 94

6    F.3d at 522.  As a general rule, an ALJ's assessment of credibility should be given great weight.

7    Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  Ordinary techniques of credibility

8    evaluation may be employed, and the adjudicator may take into account prior inconsistent

9    statements or a lack of candor by the witness.  Fair, 885 F.2d at 604 n.5.

10           Here, the ALJ stated that he considered the June 2006 statement by Aura Sosa,

11   plaintiff's girlfriend.  The ALJ credited her testimony to the extent that it supported his

12   conclusions with regard to plaintiff's ability to function.  He also credited her testimony about

13   plaintiff's problems with memory, concentration, and completing tasks, but he concluded that her

14   testimony demonstrated plaintiff's ability to perform at least simple repetitive tasks or unskilled

15   work.  (Tr. at 16.)  Plaintiff argues that the ALJ rejected Ms. Sosa's statements that plaintiff

16   reported seeing and hearing things, and failed to articulate a specific or germane reason for doing

17   so.

18           The form completed by Ms. Sosa includes a question about whether the third-

19   party witness has noticed any unusual behavior or fears in the disabled person.  (Tr. at 119.)  Ms.

20   Sosa answered in the affirmative, stating that plaintiff started having dreams and saying that he

21   heard things and saw people around him.  Plaintiff argues that the ALJ should have included Ms.

22   Sosa's answer in his summary of Ms. Sosa's observations because it is consistent with and

23   corroborates Dr. Canty's opinions, the treatment records from Visions Unlimited, and the

24   treatment records as a whole, and also because hallucinations would constitute a significant

25   barrier to plaintiff's ability to work.

26   /////

14

1    Defendant argues that the ALJ rejected Ms. Sosa's statement because it was

2    inconsistent with the objective medical evidence.  Defendant's citation to page 16 of the

3    transcript in this regard is puzzling.  There is no mention on page 16 of Ms. Sosa's statement

4    about plaintiff's hallucinations, and the ALJ's rejection of other parts of Ms. Sosa's report on the

5    ground of inconsistency with objective medical evidence applies specifically only to her

6    statements that plaintiff can walk 20 minutes before needing to rest and that he has trouble

7    sleeping to the point that it would interfere with work.  (Tr. at 16.)  There is no basis for

8    extrapolating from the ALJ's rejection of statements found in the record at pages 114 and 118

9    that the ALJ rejected a different statement found on page 119 for the same reason.

10    The court finds that the ALJ failed to address Ms. Sosa's observation about

11    plaintiff's unusual behavior in the form of seeing and hearing things and people.  The form

12    question about unusual behavior or fears is included in a section of the function report titled

13    "Information About Abilities" and corresponds to a question in the claimant's function report

14    form:  "Have you noticed any unusual behavior or fears?"  Plaintiff responded in the affirmative

15    to that question in his functional report and wrote "Bad dreams, see & hear things."  (Tr. at 111.)

16    The court finds that the ALJ should have addressed Ms. Sosa's observation

17    because it relates to plaintiff's mental functional abilities, corroborates plaintiff's own statement

18    about suffering from hallucinations, is consistent with plaintiff's statements to Dr. Canty, who

19    found plaintiff's reports of hallucinations genuine, and establishes that plaintiff had been having

20    hallucinations for some time prior to his evaluation by Dr. Canty in 2007.  The ALJ did not

21    provide any reason for tacitly rejecting Ms. Sosa's statement about plaintiff's hallucinations.

22    Plaintiff is therefore entitled to summary judgment on his argument that the ALJ erred in failing

23    to credit the third-party statements of his girlfriend regarding his hallucinations.

24    **III.    Utilizing the Grids as a Framework for Decisionmaking**

25    "The grids are an administrative tool the Secretary may rely on when considering

26    claimants with substantially uniform levels of impairment."  Burkhart, 856 F.2d at 1340.  The

grids reflect "major functional and vocational patterns" and incorporate the analysis of critical

vocational factors, i.e., age, education, and work experience, in combination with the individual's

residual functional capacity.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a).  The grids may be

utilized when they "'accurately and completely describe the claimant's abilities and limitations.'"

Burkhart, 856 F.2d at 1340 (quoting Jones, 760 F.2d at 998).  "When a claimant's nonexertional

limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the

claimant's exertional limitations, the grids are inapplicable . . . .  In such instances, the Secretary

must take the testimony of a vocational expert and identify specific jobs within the claimant's

capabilities." Burkhart, 856 F.2d at 1340 (quoting Desrosiers v. Sec'y of Health & Human Svcs.,

846 F.2d 573, 577 (9th Cir. 1988)).  See also Aukland v. Massanari, 257 F.3d 1033, 1035 (9th

Cir. 2001) (holding that "an ALJ may rely solely on the Medical-Vocational Guidelines (the

'grids') only when a claimant can perform the full range of applicable work" and the ALJ erred

in failing to obtain the testimony of a vocational expert).

After determining that plaintiff in this case has the residual functional capacity to

perform a full range of work at all exertional levels, but limited to simple repetitive tasks with no

frequent public contact, the ALJ applied the Medical-Vocational Guidelines.  (Tr. at 17.)

Plaintiff contends that the ALJ erred in failing to utilize the services of a vocational expert.

Although the court agrees, the granting of relief on this ground is not necessary.  Dr. Canty

opined that plaintiff was actively psychotic and would not be able to participate in typical work,

would not be able to attend work because of his visual hallucinations, and would not interact

effectively with others.  (Tr. at 282.)  If the ALJ had properly credited Dr. Canty's opinions and

Ms. Sosa's statements, along with the opinions and treatment records of Dr. Soliman, which

showed slight or no improvement in the course of a year of treatment, the ALJ would have found

at step four of the sequential evaluation process that plaintiff was not capable of performing any

work on a sustained basis.  Thus, it is unnecessary to grant summary judgment for plaintiff on

this claim.

**CONCLUSION**

1    The decision whether to remand a case for additional evidence or to simply award

2    benefits is within the discretion of the court. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir.

3    1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  The Ninth Circuit Court of Appeals

4    has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose

5    would be served by further administrative proceedings, or where the record has been thoroughly

6    developed." Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs.,

7    859 F.2d 1396, 1399 (9th Cir. 1988)).  This rule recognizes the importance of expediting

8    disability claims. Holohan, 246 F.3d at 1210; Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at

9    1401.

10   Here, it does not appear that a useful purpose would be served by remanding for

11   the taking of additional evidence.  Plaintiff filed his applications for DIB and SSI almost five

12   years ago.  When the opinion evidence is given the proper weight, the evidence of record

13   demonstrates that plaintiff was disabled when Dr. Canty evaluated him on June 1, 2007, and had

14   been disabled for some time.  The ALJ found that plaintiff had not engaged in substantial gainful

15   activity since the alleged onset date of December 6, 2005.  (Tr. at 10.)  The court finds it

16   appropriate to remand this case with the direction to award benefits on the ground that plaintiff

17   has been under a disability, as defined by the Social Security Act, since December 6, 2005, the

18   alleged onset date.  See Moore v. Comm'r of Soc. Sec. Admin, 278 F.3d 920, 925 (9th Cir. 2002)

19   (remanding for payment of benefits where the ALJ improperly rejected the testimony of the

20   plaintiff's examining physicians); Ghokassian, 41 F.3d at 1304 (awarding benefits where the ALJ

21   "improperly discounted the opinion of the treating physician").

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

    1.  Plaintiff's amended motion for summary judgment (Doc. No. 24) is granted;

    2.  Defendant's cross-motion for summary judgment (Doc. No. 25) is denied;

1          3.  The Commissioner's decision is reversed; and

2          4.  This case is remanded with instructions to award Disability Insurance Benefits

3    under Title II of the Social Security Act as of December 5, 2005.

4    DATED: January 24, 2011.

5

6                                        _____

7                                        DALE A. DROZD
                                         UNITED STATES MAGISTRATE JUDGE
8    DAD:kw
     Ddad1/orders.socsec/hernandez1379.order
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26